[Cite as *In re Howland Children*, 2015-Ohio-3861.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| HOWLAND CHILDREN | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | |
| | : | |
| | : | Case No. 2015CA00109 |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:         Appeal from Court of Common Pleas, Juvenile Division, Case No. 2013JCV00968

JUDGMENT:         Affirmed

DATE OF JUDGMENT:         September 21, 2015

APPEARANCES:

For Appellant                        For Appellee

JEFFREY JAKMIDES             BRANDON J. WALTENBAUGH
325 East Main Street                300 Market Avenue North
Alliance, OH  44601                Canton, OH  44702

*Farmer, J.*

{¶1} On September 18, 2013, appellee, Stark County Job and Family Services, filed a complaint alleging two children, M.H. born December 29, 2007, and M.H. born February 23, 2009, to be neglected and/or dependent children. Mother of the children is appellant, Tina Ibrahim nka Stremo; father is Marcello Howland.

{¶2} On December 4, 2013, the children were found to be dependent and were placed in the custody of Ms. Ibrahim's mother, Jennifer Lawson. The children were removed from this home due to improper disciplinary methods, and temporary custody was granted to appellee on April 23, 2014.

{¶3} On October 9, 2014, appellee filed a motion for permanent custody. A hearing was held on April 30, 2015. By judgment entry filed May 14, 2015, the trial court terminated parental rights and granted appellee permanent custody of the children. Findings of fact and conclusions of law were filed contemporaneously with the judgment entry.

{¶4} Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:

I

{¶5} "THE TRIAL COURT ERRED IN REMOVING THE CHILDREN FROM THEIR MOTHER'S CARE DUE TO UNWARRANTED CONCERNS ABOUT HER COGNITIVE ABILITIES. THE SUPREME COURT OF OHIO HAS DESCRIBED THE TERMINATION OF PARENTAL RIGHTS AS THE FAMILY-LAW EQUIVALENT OF THE DEATH PENALTY, AND HAS SPECIFICALLY HELD THAT A TERMINATION OF

PARENTAL RIGHTS MAY NOT BE BASED SOLELY ON THE LIMITED COGNTIVE ABILITIES OF THE PARENTS."

I

{¶6}   Appellant claims the trial court erred in awarding appellee permanent custody of the children as her lack of cognitive abilities should not be the reason for the termination of her parental rights.  We disagree.

{¶7}   R.C. 2151.414(E) sets out the factors relevant to determining permanent custody.  Said section states in pertinent part the following:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence.  If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused

the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(16) Any other factor the court considers relevant.

{¶8} R.C. 2151.414(B)(1)(d) specifically states permanent custody may be granted if the trial court determines, by clear and convincing evidence, that it is in the best interest of the child and:

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

{¶9}   Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v.. Ledford,* 161 Ohio St. 469 (1954), paragraph three of the syllabus.  See also, *In re Adoption of Holcomb,* 18 Ohio St.3d 361 (1985).  "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof."  *Cross* at 477.

{¶10}  R.C. 2151.414(D)(1) sets forth the factors a trial court shall consider in determining the best interest of a child:

(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶11} The children were placed in appellee's temporary custody on April 23, 2014, and the hearing was held on April 30, 2015. T. at 11-12. The children had been in appellee's custody for twelve months. R.C. 2151.414(B)(1)(d).

{¶12} Appellant argues she has cooperated and attended all the assessments and classes suggested by appellee. This is demonstrated in the record. T. at 14, 16-17, 19, 41, 65-66. There is no doubt that appellant loves her children, but there is some concern about their bond, as their interactions are "very limited" and there is not a lot of "eye contact" or affection. T. at 17-18, 87.

{¶13} Appellant's I.Q. is 63 and she functions as a four-year old on problem solving and a ten year old on a verbal level. T. at 15, 41, 59. This is something that is static and "not something we can fix." T. at 45. She exhibited possible ADHD and mania symptoms, and presented very disorganized and distracted. T. at 42, 44. Testing also revealed appellant met the criteria for dependent personality disorder, which means she "demonstrates a pattern of involvement in problematic romantic relationships" and "there's been a concern with regard to her attraction and tolerance for visually aggressive men." *Id.*

{¶14} When appellant attended Goodwill Parenting classes, she only received a certificate of attendance as she was unable to retain and apply what was taught. T. at 67, 69. She was unable to follow-through and focus. T. at 79, 81. Appellant was receiving intensive services and "was not doing well in those." T. at 22. "None of the service providers have felt that she's progressed enough to come out of the intensive programming." *Id.*

{¶15} Despite appellant's lack of cognitive skills, the main concern was her ability to parent correctly and give the children a stable, safe, and consistent environment. T. at 15, 17-18, 22-23, 30, 45. One or both of the children allegedly suffered sexual abuse at the hands of one of appellant's boyfriends, and the children were exposed to her "domestically violent relationships." T. at 29-30, 36, 42-43. We note father never participated in the case plan nor showed up for a meeting, service, or hearing. T. at 14, 15-16, 19, 34.

{¶16} Based upon the testimony and evidence presented, we concur with the trial court's following findings of fact filed on May 14, 2015:

11. The mother of [M.] and [M.H.] is Tina Ibrahim NKA Stremo. Ms. Ibrahim was served with notice of this permanent custody action. Despite case plan services and reasonable efforts by the SCDJFS, the mother has been unable to remedy the problems which led to the children's removal from her custody. The case plan, and its amendments, included the following requirements: 1) complete a parenting evaluation at Northeast Ohio Behavioral Health (NEOBH) and follow all recommendations; 2) receive an evaluation at Quest and follow all treatment recommendations; 3) successfully complete Goodwill parenting; and 4) receive mental health services and follow through with any recommendations.

Mother completed her assessment at NEOBH. Dr. Thomas testified that mother possesses the verbal skills of a ten year old and the non-verbal skills of a four year old. Mother has an IQ of 63 and her cognitive abilities are static with no possibility of improvement. Mother could possibly parent the children if she had a support system around her, but without this support system there are significant safety risks to the children. As previously stated, Ms. Ibrahim and her mother do not get along well, and Ms. Ibrahim's husband is currently serving in the United States Air Force and is stationed overseas. Amy Humrighouse, parenting instructor at Goodwill parenting, testified that although mother obtained a completion certificate and certificate of attendance, mother only completed four out of fourteen program goals set for her. Upon completion of

Goodwill parenting, mother was further recommended to attend a vocational rehab program, continue with counseling, and initiate parent-child intervention at NEOBH. Becky Crookston, therapist at NEOBH and licensed clinical counselor and in charge of the parent child intervention program at Goodwill parenting, testified that the children are experiencing a lot of anxiety in the program and in her opinion they are being re-traumatized while in mother's home. Ms. Crookston does not recommend further participation in the program.

Mother also suffers from some mental health disorders. Mother has been diagnosed with having ADHD and possibly some mania. She also exhibits signs of a dependent personality disorder which has attributed to her pattern of violent personal relationships. Most of mother's past relationships consisted of significant domestic violence towards her. The children were often times exposed to this violence and may have been victims themselves of past physical and sexual abuse by mother's boyfriends. These abusive relationships were so commonplace that the agency felt that it should monitor mother's romantic relationships for the safety of the child.

12. The Court is unable to find that [M.] and [M.] could be safely returned to their parents or maternal grandmother based upon their failure to remedy the problems that led to the removal of the children. The Court is unable to find that they will remedy these problems within a reasonable period of time.

{¶17} Although appellant did not contest best interest, we find the trial court did not err in finding the best interest of the children would be best served with the granting of permanent custody to appellee. The children have therapeutic needs and emotional issues and are doing better in foster care. T. at 105-106. The children are placed together in an "Agency foster to adopt home" and are doing very well and their needs are being met. T. at 106-108, 124. The children are bonded to one another and their foster family. T. at 108. Relative placement was explored, but it was determined not to be an option (see this court's opinion in Stark County Case No. 2015CA00113). T. at 108-110, 122-123.

{¶18} Based upon the totality of the evidence that addressed issues beyond appellant's cognitive skills, we find sufficient clear and convincing evidence to support the trial court's decision to grant appellee permanent custody of the children.

{¶19} The sole assignment of error is denied.

{¶20} The judgment of the Court of Common Pleas of Stark County, Ohio, Juvenile Division is hereby affirmed.

By Farmer, J.

Gwin, P.J. and

Delaney, J. concur.

SGF/sg 902